Filed 1/8/25  P. v. Willis CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B325337 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA020235) |
| v. | |
| RYAN O'NEAL WILLIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Ivan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Appellant Ryan O'Neal Willis appeals the summary denial of his petition for resentencing under Penal Code section 1172.6 (former 1170.95, Stats. 2022, ch. 58, § 10).[1]  The jury instructions and the jury's true findings on two special circumstances show that appellant is ineligible for relief as a matter of law.  Accordingly, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.    Facts

A.    *The underlying crime*[2]

Appellant was abusive toward taxicab driver Crystal Stahl (Stahl), with whom he lived for some time.  During one fight, appellant hit Stahl repeatedly while he told her, "You're never going to leave me."  Stahl broke up with him and started dating someone new.  Shortly thereafter, appellant attacked her, and she called the police, resulting in appellant's arrest.

Stahl moved in with her new boyfriend.

Appellant told his friends he was angry that Stahl had put him in jail and that she was dating a new man.  He stated that he was going to kill her, and more specifically, that he would burn her in the taxi she drove and flee to Las Vegas.  On January 5, 2000, appellant called the cab service and requested that Stahl pick him up at a gas station.  Stahl obliged.  Soon thereafter, she was found dead, having been burned alive in her taxicab a mile and a half from where she had picked up appellant.

---

[1] Undesignated statutory references are to the Penal Code.

[2] This summary is drawn from the opinion in the direct appeal, *People v. Willis* (2004) 115 Cal.App.4th 379 (*Willis*).

**B.**  *Conviction and appeal*

On June 27, 2002, a jury convicted appellant of first degree murder (§ 187, subd. (a)), and found true the special circumstance allegations that he committed the murder by lying in wait (§ 190.2, subd. (a)(15)) and that the murder was intentional and involved the infliction of torture (§ 190.2, subd. (a)(18)).  The trial court sentenced appellant to life without the possibility of parole.

In his direct appeal from the conviction, appellant argued that the trial court erred in admitting unreliable evidence of dog scent identifications.  (*Willis*, *supra*, 115 Cal.App.4th 379.)  This court agreed, but found the error harmless and affirmed.  (*Id*. at p. 380.)

## II.    Procedural Background

On February 4, 2022, appellant filed a petition for resentencing under section 1172.6.  After the court appointed counsel for appellant, the People filed an opposition, and appellant filed a brief in support of his petition.

At the November 4, 2022 hearing the superior court summarily denied appellant's petition, explaining, "Based on this court's view of . . . what was presented to the jury, which the court can review as far as the jury instructions are concerned[,] even at the prima facie stage and not going into the facts drawn from the appellate opinion, but simply going off what the charges are and what the jury's finding was, this court finds that the petitioner has not made a prima facie case; and that, as a matter of law, the petitioner does not qualify" for relief under section 1172.6.

## DISCUSSION

Enacted in 2018, Senate Bill No. 1437 (2017–2018 Reg. Sess.) effectively abolished the natural and probable

3

consequences doctrine in cases of murder and limited the application of the felony-murder doctrine.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  The legislation also served to eliminate murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life.  (§§ 188, subd. (a)(3) & 189, subd. (e).)  Specifically, the Legislature amended section 188 to require that when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

Section 1172.6 is the procedural vehicle by which a defendant convicted of murder may seek to vacate the conviction on the ground that it rested on a now-invalid theory that *imputes* malice to a defendant who was not the actual killer (rather than requiring a showing that the defendant *personally harbored* the requisite malice).  (§ 1172.6, subd. (a).)  A trial court may summarily deny an 1172.6 petition—that is, deny it without holding an evidentiary hearing—only if the defendant is "ineligible for relief at the prima facie stage as a matter of law" because it is not possible that the jury's verdict could rest on any theory of imputed malice invalidated by Senate Bill No. 1473.  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 867.)  We review

4

the trial court's summary denial of a petition for resentencing under section 1172.6 de novo.  (*People v. Allen* (2023) 97 Cal.App.5th 389, 395.)

Based on the jury's true findings on the lying-in-wait and torture-murder special circumstances in this case, it is not possible that the jury's verdict rested on any theory of imputed malice.  In order to find either of these special circumstances true, the jury was instructed that it must find appellant personally harbored an intent to kill.  (*People v. Flinner* (2020) 10 Cal.5th 686, 748 (*Flinner*) [lying-in-wait special circumstance requires intent to kill, unlike lying-in-wait murder]; *People v. Streeter* (2012) 54 Cal.4th 205, 246 [same]; *People v. Jennings* (2010) 50 Cal.4th 616, 647 (*Jennings*) [torture-murder special circumstance requires an intent to kill, unlike murder by torture]; *People v. Superior Court* (*Riverside*) (2023) 88 Cal.App.5th 26, 32–33 [same].)  The jury's special circumstance findings thus preclude relief under section 1172.6 as a matter of law.  The summary denial of appellant's resentencing petition was appropriate.

Appellant relies on *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) to argue that these true findings do not necessarily render him ineligible for relief under section 1172.6.  *Curiel* held that a jury's true finding on a gang-murder special circumstance, which required an intent to kill, did not make the defendant ineligible for relief as a matter of law because it did not "conclusively establish[] every element" of a still-valid theory of murder.  The remaining record of conviction also did not demonstrate ineligibility for relief, because the jury was instructed on the natural and probable consequences doctrine

5

and was not required to state the theory of murder liability on which its conviction was based.  (*Id*. at pp. 462–463, 468.)

Unlike the gang-murder special circumstance at issue in *Curiel*, however, the murder-by-lying-in-wait special circumstance (§ 190.2, subd. (a)(15)) requires *all* the elements of the still-valid theory of murder (§ 189, subd. (a)), plus the intent to kill.  (*People v. Parker* (2022) 13 Cal.5th 1, 58, *Flinner*, *supra*, 10 Cal.5th at p. 748; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1148–1149.)  The same goes for the torture-murder special circumstance (§ 190.2, subd. (a)(18)).  (*Jennings*, *supra*, 50 Cal.4th at p. 647 ["the torture-murder special circumstance requires (1) proof of first degree murder, (2) proof that the defendant intended to kill and torture the victim, and (3) proof of the infliction of an extremely painful act upon a living victim"].)

Moreover, the jury in this case was not instructed on *any* theory of liability for murder that allowed malice to be imputed to appellant:  There was no instruction on a felony-murder theory, the natural and probable consequences doctrine, or, for that matter, any "target" offense other than murder.[3]  (Cf. *Curiel*, *supra*, 15 Cal.5th at p. 466 [jury was instructed on target offenses of "disturbing the peace and carrying a concealed firearm by a gang member"].)  The absence of such instructions, which appellant does not dispute, further precludes the possibility that the jury's conviction rested on a theory of imputed malice. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law"]; see *People v.*

---

[3] Although appellant was charged with robbery and kidnapping, the jury was not instructed on those crimes.

6

*Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, [it] could not have convicted the defendant on that basis"].)

Appellant cites *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) to argue that aiding and abetting instructions may sometimes permit a jury to impute malice to a defendant. In *Langi*, the defendant was convicted of second degree murder as an aider and abettor based on his participation in a fistfight among several people, in which the victim died as a result of falling and hitting the back of his head on the pavement after being punched in the face. (*Id.* at pp. 975, 976–977.) On appeal from the summary denial of defendant's section 1172.6 petition, the *Langi* court determined that the instruction on aiding and abetting (CALJIC No. 3.01) creates an ambiguity in the context of second degree implied-malice murder, which may allow the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi*, at p. 982.)

*Langi* has no application to the instant case for the simple reason that appellant's jury did not receive instructions on second degree murder (CALJIC No. 8.31), so the ambiguity that might have led *Langi's* jury to impute malice is not present. Indeed, as explained above, appellant's jury necessarily found that he personally harbored the intent to kill when it found true the lying-in-wait and torture-murder special circumstances; it did not impute malice to appellant under any theory.

Nevertheless, appellant asserts that the instructions given on aiding and abetting, paired with those on "unjoined perpetrators of same crime" (CALJIC No. 2.11.5) and malice

7

aforethought (which defines both express and implied malice) (CALJIC No. 8.11), left room for the jury to impute malice to appellant. We are not persuaded.

The unjoined perpetrator instruction informed the jury that "[t]here has been evidence in this case indicating that a person other than defendant . . . may have been involved in the crime for which the defendant is on trial," but admonished the jury "not [to] discuss or give any consideration as to why the other person is not being prosecuted," and went on to remind the jury that its sole "duty is to decide whether the People have proved the guilt of the defendant on trial." Nothing in this instruction, the aiding and abetting instruction, or the malice aforethought instruction permitted the jury to impute malice to appellant, and appellant fails to explain how the combination of these instructions allowed the jury to convict him on a now-invalid theory of murder. (*Gentile, supra,* 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"], citing *People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Vargas* (2022) 84 Cal.App.5th 943, 953; *People v. Carr* (2023) 90 Cal.App.5th 136, 139 ["Implied malice is not imputed malice"].)

Finally, although the superior court stated its intention to soon "file a written decision with the parties," it never did so. Appellant contends that the court's ruling from the bench was too vague to meet the requirement that the court "provide a statement fully setting forth its reasons" for denying the petition (§ 1172.6, subd. (c)). But he fails to explain how these purported shortcomings prejudiced him. We therefore deem this argument waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

8

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.